UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
SEP 21 2005
CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| DAKOTA COMMUNICATIONS SOLUTIONS, INC., a South Dakota corporation, | * * * * | CIV. 03-4129 |
| Plaintiff, | * * | |
| -vs- | * * * | OPINION AND ORDER |
| ENERGY AMERICA, L.L.C., a wholly-owned subsidiary of Centrica plc, | * * * | |
| Defendant and Third-Party Plaintiff, | * * * | |
| -vs- | * * | |
| TOTAL CREDIT RECOVERY, INC., a Canadian corporation, | * * * | |
| Third-Party Defendant. | * * | |

********************************************************************************

Pending are Defendant and Third-Party Plaintiff Energy America's (Energy's) motions to engage in jurisdictional discovery (Doc. 49-1) and to postpone the deadline for filing a brief responding to Third-Party Defendant Total Credit Recovery Limited's (TCR's) motion to dismiss for lack of jurisdiction (Doc. 49-2).

## BACKGROUND

Plaintiff Dakota Communication Solutions (Dakota) sued Energy without alleging a cause of action for misappropriating trade secrets. Later, on November 16, 2004, Dakota amended its complaint to assert a claim against Energy for misappropriating trade secrets. Energy answered in December 2004 and in January 2005 asserted this third party claim against TCR. An Amended

Third-Party Complaint was filed on April 28, 2005. TCR responded to the amended third party complaint on June 27, 2005, by making a motion under Federal Rule of Civil Procedure 12 to dismiss for lack of jurisdiction. Energy reacted by making the pending motions to engage in discovery and to postpone its obligation under Local Rule 7.2 to file a brief addressing TCR's motion to dismiss.

Energy contracted with Dakota to provide third party verification services, i.e. Dakota would call Energy customers to verify that they knew of and consented to the transfer of their utility services from their previous provider to Energy. Dakota asserts in its amended complaint against Energy that Dakota developed software and technical matters which qualify as trade secrets to accomplish the verification service. Energy contracted with Dakota to provide the same service in Michigan, a new market for Energy. The new market campaign was to take place from April to December, 2002. In preparation for the project Dakota asserts it made substantial investments in additional equipment and additional personnel. Then Energy terminated the contract with Dakota and contracted instead with TCR to perform the verification service in Michigan. Dakota claims, among other causes of action, Energy "disclosed or used [Dakota's] trade secret or software program to third parties without express or implied consent" (Doc.34-1, ¶ 43). Energy asserted a third party claim for contribution and indemnity against TCR regarding Dakota's allegation. TCR filed an affidavit from its president saying TCR is not licensed to conduct activities of any kind whatsoever in South Dakota, has no office in the United States, let alone in South Dakota, and does no business at all in South Dakota (Doc. 55-1). TCR's web site touted itself as licensed to do business across North America, all the provinces of Canada, and all 50 of the United States until July 2005.

Dakota is a South Dakota corporation with its principal place of business in Brookings. Energy is a Connecticut corporation with its principal place of business in Stamford. TCR is a

Canadian corporation with its principal place of business in Toronto.  The place where the verification services were provided, during which the trade secret was allegedly misappropriated, is Michigan.

Jurisdiction is based on diversity of citizenship.  The claims at issue between Energy and TCR are a tort claim for contribution and a contract claim for indemnity regarding Dakota's complaint against Energy for "disclosing or using" Dakota's trade secret.

## ANALYSIS

Jurisdiction is always an important issue, and sometimes a complex issue. Recent, pertinent cases have been decided by Judge Piersol of this district, the Eighth Circuit, other circuit courts of appeal, and the United States Supreme Court.  Those cases confirm that "determining personal jurisdiction has always been more of an art than a science" and, quoting Justice Marshall, "is one in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable." U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 617-618 (1st Cir. 2001) internal cites omitted.  Suffice it to say there are different tests, including the gestalt factors, to determine jurisdiction depending on whether the basis for jurisdiction is diversity, federal question, or the Foreign Sovereign Immunities Act. The test to apply in a particular case depends on whether specific or general jurisdiction is the subject, and whether Federal Rule of Civil Procedure 4(k)(2) or some other nuance such as the "stream of commerce" or the "effects" doctrine is involved.  There is debate and confusion among the circuits whether the Calder effects doctrine applies only in defamation cases, or whether it also applies in all intentional tort cases, or whether it applies in all tort cases, not to mention that one of Energy's claims in its' third party complaint is a contract claim for indemnity. Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d. 804

3

(1984). Where general jurisdiction is involved the test is more stringent than that applied to specific jurisdiction cases. There must be substantial and continuous contacts with the state. In specific jurisdiction cases there is a three part test in at least one circuit and a five factor test in the Eighth Circuit.

Unless during discovery Energy can establish that TCR's website establishes general jurisdiction, i.e. substantial and continuous contacts with South Dakota, specific jurisdiction is the issue here.

> The determination of whether the Court has personal jurisdiction over a defendant is normally a two-step analysis. First, the applicable state long-arm statute, here SDCL § 15-7-2 must be satisfied and second, the Court's exercise of jurisdiction must comport with due process. In South Dakota, the analysis collapses into one step: the due process analysis. Due process allows a Court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice and if the defendant has sufficient "minimum contacts" with the forum state. The contacts are sufficient if the defendant "should reasonably anticipate being haled into court there" because he has performed "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The inquiry is whether the defendants have directed their activities toward residents of the forum and whether the litigation arises out of those activities.

Estate of Witko v Hornell Brewing Co., 156 F. Supp.2d 1092, 1096 (D.S.D. 2001); internal citations omitted.

The "five factor" test is used to evaluate personal jurisdiction under the due process clause. Id. The Calder effects test is a way to evaluate the first three steps of the five factor test. Estate of Witko at 1101. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Digi-tel Holdings, Inc. v.Proteq Telecommunications, 89 F.3d 519, 525 (8th Cir. 1996).

4

Energy's claims to establish jurisdiction. Energy denies Dakota's trade secrets have been misappropriated, but, if they were, then TCR "necessarily misappropriated the trade secrets and committed intentional and tortious acts aimed at residents of South Dakota and the brunt of the harm resulting from those acts has been felt in South Dakota." Energy also argues the TCR website until July 2005 indicated TCR was licensed to do business in all fifty United States.

TCR's claims to show the absence of jurisdiction. TCR filed an affidavit of its president indicating TCR is not licensed to conduct collection activities in South Dakota, does no business in South Dakota and has no office in South Dakota. TCR also mentions the acts or omissions alleged by Dakota occurred in Michigan, not South Dakota.

## CONCLUSION AND ORDER

To not grant jurisdictional discovery was an abuse of discretion where information was lacking about the nature of a website and the significance of the contacts the residents of a state maintained with the nonresident through the website. Lakin v. Prudential Securities, Inc., 348 F.3rd 704, 713 (8th Cir. 2003). Energy's prima facie showing is thin, but it should be given the opportunity to serve interrogatories and take two depositions limited to the subject of jurisdiction. Jurisdiction is sure to be an important, perhaps complex, issue in this case. Energy needs the opportunity to conduct discovery to uncover more about TCR's contacts with South Dakota. It is desirable for the District Court to have more information before this issue is decided than that which is currently in the record. Accordingly, it is hereby

ORDERED that Energy's motions to engage in jurisdictional discovery (Doc. 49-1) and to postpone filing a brief responding to TCR's motion to dismiss until after jurisdictional discovery has been conducted (Doc. 49-2) are GRANTED. The jurisdictional interrogatories shall be served not

later than Monday, October 10, 2005. The depositions shall be noticed or arranged by mutual

agreement of the parties to be completed not later than December 1, 2005.

Dated this _21st_ day of September, 2005.

BY THE COURT:

John Simko
John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, CLERK

By: _Shelly Margulies_ , Deputy

(SEAL)

6